UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 15-20032 |
| TEXAS ENTERPRISES, LLC d/b/a | § | |
| BLUEBONNET ELITE ASSISTED | § | |
| LIVING | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

## FIRST AMENDED PLAN OF REORGANIZATION

Texas Enterprises, LLC, (the "Debtor"), proposes this First Amended Plan of Reorganization (the "Plan"), pursuant to section 1121(a), title 11, United States Code, for the resolution of Debtor's outstanding Creditor Claims and Equity Interests.

## ARTICLE 1.

## SUMMARY OF THIS PLAN

Capitalized terms used in the following summary are as defined in Article 2, the Definitions, Construction and Interpretation portion of this Plan.

This Plan provides for the treatment of all Claims in a manner that is in the best interests of Creditors and is fair and equitable. It calls for the continuation of Debtor's business operations and the use of future income to pay allowed claims under the terms and conditions set out herein.

## ARTICLE 2.

## DEFINITIONS, CONSTRUCTION AND INTERPRETATION

As used in the Plan, the following terms shall have the meanings specified below.

2.1.    Acceptance: has the meaning contained in Section 1126 of the Bankruptcy Code, 11 U.S.C. § 1126, and requires that the holder of a Class of Claims against the Debtor accept this Plan by at least two-thirds in amount and more than one-half in number of such Class of Claims or two-thirds in amount of those Claims of Interests actually voting in connection with this Plan.

2.2.    Administrative Expense: Any cost or expense of administration of the Chapter 11 Case incurred on or before the Confirmation Date entitled to priority under sections 364(c)(1) or 507(a)(1) or allowed under section 503(b) of the Bankruptcy Code, including any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, certain taxes, fines and penalties,

any actual and necessary expenses of operating the business of the Debtor, any indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property or for provision of services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under chapter 123, title 28, United States Code.

2.3.    <u>Allowed</u>: When used in connection with a Claim, any Claim against or Equity Interest in the Debtor, proof of which was filed on or before the last date designated by the Bankruptcy Court as the last date for filing proofs of Claim or Equity Interest or such other applicable date as ordered by the Bankruptcy Court or permitted by the Bankruptcy Rules; or, if no proof of Claim or Equity Interest is filed, any Claim against or Equity Interest in the Debtor which has been or in the future is listed by the Debtor as liquidated in amount and not disputed or contingent and a Claim or Equity Interest as to which no objection to the allowance thereof has been interposed; or, in the case of Administrative Expense Claim recognized as such by the Debtor, such Claim or Equity Interest has been allowed in whole or in part by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" shall not, for the purposes of computation or Distributions under the Plan, include post-petition interest on the amount of the Claim.

2.4.    <u>Assumed Agreements</u>: All executory contracts and unexpired leases of the Debtor, which have not been previously rejected or have motions pending seeking rejection, and which are assumed either by Court order or herein.

2.5.    <u>Bankruptcy Code</u>:  The Bankruptcy Reform Act of 1978, as amended, title 11, United States Code, as applicable to this Chapter 11 case.

2.6.    <u>Bankruptcy Court</u>:  The United States District Court for the Eastern District of Texas, Marshall Division, having jurisdiction over the Chapter 11 Case, or in the event such Court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Eastern District of Texas, Marshall Division.

2.7.    <u>Bankruptcy Rules</u>:  The Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to this Chapter 11 Case.

2.8.    <u>Bar Date</u>: "Bar Date" shall mean the final date for filing proofs of claim in this case as established by order of the Court.

2.9.    <u>Cash</u>: Cash, cash equivalents and other readily marketable securities or instruments issued by a Person other than a Debtor, including readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

2.10.   <u>Chapter 11 Case</u>:  This case under Chapter 11 of the Bankruptcy Code in which the Debtor is the Debtor-in-Possession.

2.11.   <u>Claim</u>:  Any right to payment from the Debtor arising at any time before the Effective Date, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to any equitable remedy for future performance if the applicable breach gives rise to a right of payment from the Debtor, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.12.   <u>Code</u>:  The United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978, and thereafter amended.

2.13.   <u>Confirmation</u>:  The date upon which the Bankruptcy Court enters the Confirmation Order to confirm the Plan which becomes final and non-appealable after hearing conducted pursuant to Section 1129 of the Bankruptcy Code.

2.14.   <u>Confirmation Date</u>:  The date on which the Bankruptcy Court enters the Confirmation Order.

2.15.   <u>Confirmation Order</u>:  A Final Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.16.   <u>Contingent Claim</u>:  a Claim arising from a contract or agreement where the Debtor agreed to be contingently liable for or guaranteed the obligations of a person or entity.

2.17.   <u>Court</u>:  shall mean the United States Bankruptcy Court for the Eastern District of Texas, Marshall Division, having jurisdiction over this case.

2.18.   <u>Creditor</u>:  Any person that holds a Claim against Debtor that arose on or before the Effective Date, or a Claim against Debtor of any kind specified in sections 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.19.   <u>Debtor</u>:  shall mean Texas Enterprises, LLC, the Debtor herein.

2.20.   <u>Disclosure Statement</u>:  The Disclosure Statement under 11 U.S.C. § 1125, filed by the Debtor  in connection with this Plan, and as thereafter amended.

2.21.   <u>Disputed Claim</u>:  A Claim against  Debtor (a) as to which an objection has been filed on or before the deadline for objecting to a Claim by the Debtor or any party in interest and which objection has not been withdrawn or resolved by entry of a Final Order, (b) a Claim that has been asserted in an amount greater than that listed in the Schedules as liquidated in an amount and not disputed or contingent, or (c) that the Schedules list as contingent, unliquidated or disputed.  A claim

shall *not* be considered a Disputed Claim if such claim has previously been allowed by order of the Bankruptcy Court.

2.22.   <u>Disputed Claims Reserve</u>:  A segregated account to be held in trust by the Debtor for the benefit of holders of Disputed Claims in accordance with the provisions of the Plan.

2.23.   <u>Distribution</u>:  The property required by the Plan to be distributed to the holders of Allowed Claims.

2.24.   <u>EBITDA</u>: For a period, the sum of (i) pretax earnings from continuing operations, (ii) interest expense and (iii) depreciation, depletion, and amortization of tangible and intangible assets, before (a) special extraordinary gains, (b) minority interest, and (c) miscellaneous gains and losses, in each case for such period, computed and calculated in accordance with GAAP.

2.25.   <u>Effective Date</u>:  shall mean and occur on the thirtieth (30th) business day after entry of the Confirmation Order, unless the effectiveness of the Confirmation Order has been stayed or vacated by a court of appropriate jurisdiction, in which case the Effective Date shall be the later of the 30th business day after the entry of the Confirmation Order or such date thereafter when any stay of the effectiveness of the Confirmation Order has expired or otherwise terminated.

2.26.   <u>Equity Interest</u>:  Any equity interest in the Debtor by ownership of Existing Common Stock, including any warrants or options to acquire any Existing Common Stock and any rights pertaining to the Existing Common Stock, including voting rights, rights, if any, to receive dividends or other distributions, rights to request or demand any shares to be registered under securities laws, rights to nominate directors or to otherwise determine membership on a board of directors or any committee of a board of directors.

2.27.   <u>Excess Cash Flow</u>:   For any period, and calculated without including the Reserve, EBITDA less (i) principal payments made during the fiscal period, excluding all post-petition payments on unsecured debt during either the bankruptcy case or pursuant to this Plan, (ii) interest payments made during the fiscal period, excluding  all post-petition payments on unsecured debt during either the bankruptcy case or pursuant to this Plan, (iii) capital expenditures, (iv) current taxes (income, franchise, sales, or property) and (v) costs of the Bankruptcy Case, including professional fees, during the fiscal period.

2.28.   <u>Filing Date</u>: The above-referenced bankruptcy case was filed on December 11, 2014.

2.29.   <u>Final Order</u>: An order of the Court that has become conclusive of all matters adjudicated thereby and is in full force and effect because it has not been reversed, modified or amended, as to which the time for appeal, review, *certiorari* proceeding, or other proceeding for review or rehearing has expired, and as to which no such appeal, review, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

2.30.    Fully Secured Claim: A Claim secured by a lien on property whose value exceeds the Allowed amount of that Claim pursuant to Section 506(a) of the Bankruptcy Code.

2.31.    GAAP: Generally accepted accounting principles in effect on the date of Confirmation consistently applied.

2.32.    General Unsecured Claims: A Claim not secured by a charge against or interest in property in which the Debtor's estate has an interest.

2.33.    Insider: shall have the meaning given such term under the provisions of the Code and shall include any present or past officers, directors, and/or owners of interests in the Debtor.

2.34.    Lien: Any charge against or interest in property to secure payment of a debt or performance of an obligation, and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust, and statutory lien as defined in Section 101 of the Code.

2.35.    Person:  An individual, a corporation, a limited liability company, a partnership, a limited partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a government or any agency or subdivision thereof or any other entity.

2.36.    Petition Date:  The date on which the Debtor filed its voluntary chapter 11 petition, being March 2, 2015.

2.37.    Plan: This Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, either in its present form, including exhibits, or as it may be altered, amended, or modified from time to time.

2.38.    Plan Participants: Debtor, Reorganized Debtor, and its directors, officers, employees and advising professionals.

2.39.    Priority Non-Tax Claim:  Any Claim (other than an Administrative Expense Claim or a Priority Tax Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code including, but not limited to, a Claim of an employee of a Debtor for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned before the Petition Date (to the extent allowed by the Bankruptcy Code).

2.40.    Priority Tax Claim:  Any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

2.41.    Proponent: shall mean the Debtor.

2.42.    Pro Rata:  Proportionately, based on the percentage amount of the distribution made

on account of a particular Allowed Claim and the distributions made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included.

2.43.    Qualified Bidder:    In order to be a Qualified Bidder, a prospective bidder must provide documentation of financial responsibility satisfactory to Debtor's counsel, such as by way of example a letter of credit from a bank or other unqualified evidence of available cash (not other assets) in the amount of the maximum cash bid to be made, not less than 5 days prior to any auction held pursuant to Article 15 herein.  The amount of the bid and proof shall remain confidential with the Debtor's counsel and not disclosed to Debtor's principals or any other person.  Should Debtor's counsel find such evidence to be unsatisfactory, notice of such failure shall be given to the prospective bidder not less than 48 hours prior to the time scheduled for the auction.  No holder of a scheduled or filed claim which is disputed by Debtor shall be eligible to be a Qualified Bidder.

2.44.    Related Documents: All documents executed and delivered (or otherwise made effective) by the Debtor in connection with this Plan on or about the time of the Effective Date to evidence the new debt and equity structure of the Reorganized Debtor.

2.45.    Reorganized Debtor: The Debtor, as reorganized pursuant to this Plan.

2.46.    Representatives: Any officer, director, financial advisor, attorney or other professional who participated in the formulation or confirmation of the Plan for the Debtor or the Plan Participants.

2.47.    Reserve: An amount of cash to be set aside and excluded from Excess Cash Flow determinations for continued expense of business operations.  The initial Reserve amount shall be $50,000.00.

2.48.    Schedules:  The Schedules of Assets and Liabilities, Statement of Financial Affairs and Statement of Executory Contracts, as each may be amended, filed by the Debtor with the Bankruptcy Court in accordance with section 521(l) of the Bankruptcy Code.

2.49.    Secured Claim:  A Claim to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of the Debtor's estate securing such Claim.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

2.50.    Tax Claim: Claims of the kind specified in Section 507(a) of the Code.

2.51.    Unsecured Deficiency Claim:  A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court

pursuant to section 506(a) of the Bankruptcy Code, of such Creditor's interest in property of the Debtor's estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code, unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a secured claim to the extent allowed.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include each of the masculine, feminine and the neuter genders. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. In this Plan, "including" means "including without limitation".

A term used in this Plan, not defined in this Plan and defined in the Bankruptcy Code has the meaning assigned to it in the Bankruptcy Code. A term used in this Plan, not defined in this Plan, not defined in the Bankruptcy Code and defined in the Bankruptcy Rules has the meaning assigned to it in the Bankruptcy Rules.

## ARTICLE 3.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests of the Debtor  are classified as follows:

a.    **Class 1:**    **ALLOWED AD VALOREM TAX CLAIMS.**  This class consists of all claims of taxing authorities for ad valorem tax claims which are secured by virtue of TEX. PROP. TAX CODE § 32.01, as the same are allowed, approved or ordered paid by the Court.

b.    **Class 2:**    **ALLOWED SECURED CLAIMS OF MUFG UNION BANK, N.A.**  This class consists of the Allowed Secured Claims of MUFG Union Bank, N.A. partially secured by Debtor's real property located at 102 Floyd St., Naples, TX 75568.

**c.**    **Class 3:**    **ALLOWED SECURED CLAIMS OF WESTERN ENTERPRISES.**  This class consists of the Allowed Secured Claim of Western Enterprises partially secured by Debtor's 2008 Dodge Grand Caravan.

c.    **Class 4:**    **ALLOWED PRIORITY TAX CLAIMS.**  This class consists of the Allowed Priority Tax Claims of the Internal Revenue Service as represented by claim number 2.

d.    **Class 5:**    **ALLOWED EXECUTORY CONTRACT CLAIMS.**  This class consists of the Allowed Claims of all persons holding executory contracts and/or lease agreements with the Debtor

which have not yet been rejected, assumed, or assumed and modified by the Debtor; provided any Claims otherwise treated in this Plan shall not be included in this Class.

e.    **Class 6:    A**LLOWED **U**NSECURED **C**REDITORS **C**LAIMS.  This class consists of all Allowed Claims held by any creditor of the Debtor who holds no lien rights or other rights against specific property of the Debtor securing the payment of their claim, the deficiency amount of any claim which is secured by property of the Debtor which has a value less than the amount of the claim, claims which are not entitled to priority pursuant to 11 U.S.C. § 507, and any claims arising from the Debtor's rejection of executory contracts.   All claims not administrative in nature or otherwise in Classes 1, 2, 3, 4, 5, or 7 are Unsecured Claims.

f.    **Class 7:    A**LLOWED **C**LAIMS OF **E**QUITY **S**ECURITY **H**OLDERS OF **D**EBTOR. This class consists of  the holders of any equity interest in the Debtor by ownership of Existing Common Stock, if applicable, including any warrants or options to acquire any Existing Common Stock and any rights pertaining to the Existing Common Stock, including voting rights, rights to request or demand any shares to be registered under securities laws, rights to nominate directors or to otherwise determine membership on a board of directors or any committee of a board of directors.

## UNCLASSIFIED CLAIMS

**A**LLOWED **A**DMINISTRATIVE **E**XPENSE **C**LAIMS.  These claims consist of claims for any cost or expense of administration of the Chapter 11 Case allowed under Sections 364(c)(1) or 503(b) of the Bankruptcy Code, unless otherwise provided in this Plan, including any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, certain taxes, fines and penalties, any actual and necessary expenses of operating the business of the Debtor, any indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property or for provision of services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under chapter 123, title 28, United States Code, and shall include all fees due to the Office of the United States Trustee both pre- and post-confirmation.

## ARTICLE 4.

## IDENTIFICATION OF CLAIMS AND
## EQUITY INTERESTS IMPAIRED BY THE PLAN

a.    Unimpaired Classes: All classes are impaired under the Plan and are entitled to vote to accept or reject the Plan.

b.    Impaired Classes to Vote on Plan:  The Claims and Equity Interests specified in Classes 1, 2, 3, 4, 5, 6, and 7 are *impaired* and are *entitled to vote* to accept or reject the Plan.

c.      Controversy Concerning Impairment:  In the event of a controversy as to whether any Claim or Equity Interest or class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine the controversy.

## ARTICLE 5.

## PROVISIONS FOR TREATMENT OF UNCLASSIFIED
## ALLOWED ADMINISTRATIVE EXPENSE CLAIMS

a.      Full Payment:  Unless otherwise provided herein, each Allowed Administrative Expense Claim shall be paid in full on the later of the Effective Date or the due date after court approval (if required by law), or paid on other agreed terms.

b.      Impairment:  Administrative Expense Claims are not impaired under the Plan.

## ARTICLE 6.

## PROVISIONS FOR TREATMENT OF
## ALLOWED AD VALOREM TAX CLAIMS (CLASS 1)

a.      Ad Valorem Tax Claims:   The Class 1 Ad Valorem Tax Claim holders shall retain their liens against the property of the Debtor, including any liens for personal property taxes accruing after the filing of this bankruptcy for tax years through and ending on December 31, 2015. The Allowed Claims of taxing authorities for ad valorem tax claims for tax years through and ending on December 31, 2014 which are secured by virtue of TEX. PROP. TAX CODE § 32.01, shall be paid in full as an allowed secured claim in  periodic installments with interest at the rate designated below.  The allowed secured class 1 claim for tax years through and ending on December 31, 2014 shall equal the sum of a) $13,148.62, the amount of 2014 taxes, plus b) interest at the rate of 12.00% per annum.

b.      Payment:  The allowed secured class 1 claim for tax years through and ending on December 31, 2014  shall be paid as set out herein below and shall bear and accrue interest at the annual rate of 12.00%:

A)      Due and payable in 12 monthly installments of principal and interest each in the sum of $1,168.24 with the first payment being due and payable 30 days following the later of the Effective Date or the date the Claim becomes an Allowed Claim, or as soon thereafter as practicable, and a like payment on the same date of each month thereafter for a total of 12 monthly payments.

## Ad Valorem

| Amount of | Interest | | No. of | Amt. of | | Disbursement |
|-----------|----------|---|--------|---------|---|--------------|

| Collateral | Claim | Rate | Payments | Payment | Months | Start Date |
|---|---|---|---|---|---|---|
| 102 Floyd St. | $13,148.62 | 12.0% | 12 | $1168.24 | 1-12 | Eff. Date + 30 days |

      c.     Ad valorem taxes assessed for the year 2015 and each subsequent year are to be timely paid when otherwise due and are subject to state court collection without recourse to the Bankruptcy Court after confirmation of this Plan.

      d.     <u>Impairment</u>: The Class 1 Claims are impaired under the Plan.

**ARTICLE 7.**

**PROVISIONS FOR TREATMENT OF
SECURED CLAIMS OF MUFG Union Bank, N.A. (CLASS 2)**

      a.     <u>Treatment:</u>  The holder of the Class 2 Claims, MUFG Union Bank, N.A., shall receive the following treatment: MUFG Union Bank, N.A. is the holder of two notes (claim numbers 5 and 6) secured by real property consisting of an assisted living facility located at 102 Floyd St., Naples, Morris County, TX 75568. The rights of MUFG Union Bank, N.A. with respect to its two notes (claim numbers 5 and 6) secured by 102 Floyd St., Naples, Morris County, TX 75568 shall be modified, and the Class Two Claim shall be paid as an allowed secured claim by the Debtor to the extent of the 11 U.S.C. § 506(a)(1) fair market value of 102 Floyd St., Naples, Morris County, TX 75568 in periodic installments with interest at the rate designated below. MUFG Union Bank, N.A. shall retain its perfected liens and security interest(s) in 102 Floyd St., Naples, Morris County, TX 75568 until such secured claim is paid in full as provided for herein. As set forth in the *Order Granting in Part and Denying in Part Debtor's Motion for § 506 Valuation of Real Property* [Dkt. No. 94] the fair market value of 102 Floyd St., Naples, Morris County, TX 75568 is $1,050,000.00. The allowed secured class 2 claim shall equal the sum of a) the fair market value of 102 Floyd St., Naples, Morris County, TX 75568, $1,050,000.00, plus b) interest at the rate of 5.00% per annum.

      b.     <u>Payment:</u>  The allowed secured class 2 claim of MUFG Union Bank, N.A. shall be paid as follows with interest at the annual rate of 5.0%:

          1.)     Due and payable in <u>one hundred nineteen</u> (<u>119</u>) monthly installments of principal and interest payments, each in an amount necessary to amortize the principal amount of $1,050,000.00 over a <u>twenty five (25)</u> year period, with the first principal and interest payment of <u>six thousand one hundred thirty eight and 20/100 dollars</u> (<u>$6,138.20</u>) being due and payable 30 days following the later of the Effective Date or the date the Claim becomes an Allowed Claim, and 118 like payments of principal and interest on the same date of each month thereafter; and

          2.)     A final payment of all remaining unpaid principal, accrued interest and other charges being due and payable in the 120th month after the first month in which a monthly payment is due, on the same monthly due date as the first monthly

payment.

The estimated amount of each payment under this Plan listed below is an estimate, and the actual amount of each disbursement shall be calculated as set forth above.

### MUFG Union Bank, N.A.

| Collateral | Amount of Claim | Interest Rate | No. of Payments | Amt. of Payment | Months | Disbursement Start Date |
|---|---|---|---|---|---|---|
| Real property | $1,050,000.00 | 5.0% | 120 | $6138.20 | 1-120 | Eff. Date + 30 days |

As additional security for payment of the secured claim of MUFG Union Bank, N.A. as set forth above, Debtor shall grant a new security interest to MUFG Union Bank, N.A. in and to the Furniture, Fixtures, and Equipment of Debtor.  Such new security interest shall be evidenced by a security agreement and perfected by filing of a financing statement.

Debtor and MUFG Union Bank, N.A. shall sign and execute (1) a renewal, extension, and modification agreement of the underlying related loan documentation evidencing the secured portion of the claims of MUFG Union Bank, N.A. with the payment terms as set out above; and (2) a security agreement and financing statement with the new security interest terms as set out above (collectively the "New Loan Documents").  Jan Litwin shall, if required by MUFG Union Bank, N.A., sign a guaranty of said renewal, extension, and modification agreement.  If a dispute arises between MUFG Union Bank, N.A. and Debtor over the form or substance of the New Loan Documents, then either party may file a motion requesting that the Court approve or modify the forms or that standard State Bar of Texas forms be used for such purpose with appropriate modifications to reflect the terms and conditions set out in the Plan. Notwithstanding anything to the contrary herein, payments contemplated in paragraph "b" above shall not begin or be required until such time as Debtor and MUFG Union Bank, N.A. sign and execute the New Loan Documents on the terms as set out above.

Debtor and MUFG Union Bank, NA will a reasonable time after the Effective Date dismiss with prejudice their claims against each other in Cause No. 25,022 styled *Texas Enterprises, LLC v. Pacific Capital Bank, N.A.* pending in the 76th/276th Judicial District Court of Morris County, Texas.

The deficiency amount, if any, due and owing to MUFG Union Bank, N.A. shall be treated as a Class 6 unsecured claim herein.

c.     <u>Impairment</u>: The Class 2 claims are impaired under the Plan.

### **ARTICLE 8.**

## PROVISIONS FOR TREATMENT OF
## ALLOWED CLAIM OF WESTERN ENTERPRISES (CLASS 3)

a.      The holder of the Class 3 Claim, Western Enterprises, shall receive the following treatment: Western Enterprises is the holder of a note secured by Debtor's 2008 Dodge Grand Caravan.   The rights of Western Enterprises with respect to its note secured by Debtor's 2008 Dodge Grand Caravan shall be modified, and the Class 3 Claim shall be paid as an allowed secured claim by the Debtor in  periodic installments with interest at the rate designated below.  Western Enterprises shall retain its perfected liens and security interest(s) in Debtor's 2008 Dodge Grand Caravan until such secured claim is paid in full as provided for herein.  The fair market value of Debtor's 2008 Dodge Grand Caravan is estimated as $5,500.00.  The allowed secured class 2 claim shall equal the sum of a) $5,000.00, the amount such note plus b) interest at the rate of 5.00% per annum.

b.      Payment:  The allowed secured class 3 claim of Western Enterprises shall be paid as set out herein below and shall bear and accrue interest at the annual rate of 5.0%:

A)      Due and payable in 24 monthly installments of principal and interest each in the sum of $219.36 with the first payment being due and payable 30 days following the later of the Effective Date or the date the Claim becomes an Allowed Claim, or as soon thereafter as practicable, and a like payment on the same date of each month thereafter for a total of 24 monthly payments.

The estimated amount of each payment under this Plan listed below is an estimate, and the actual amount of each disbursement shall be calculated as set forth above.

### Western Enterprises

| Collateral | Amount of Claim | Interest Rate | No. of Payments | Amt. of Payment | Months | Disbursement Start Date |
|---|---|---|---|---|---|---|
| 2008 Dodge | $5,000.00 | 5.0% | 24 | $219.36 | 1-24 | Eff. Date + 30 days |

The deficiency amount, if any, due and owing to Western Enterprises would be treated as a Class 7 unsecured claim herein.

c.      Impairment: The Class 3 claims are impaired under the Plan.

## ARTICLE 9.

## PROVISIONS FOR TREATMENT OF
## ALLOWED PRIORITY CLAIMS (CLASS 4)

a.      Treatment - Except to the extent that a holder of a Class 4 Allowed Priority Claim has been paid prior to the Effective Date, or agrees to a different treatment, each holder of an unsecured priority claim under 11 U.S.C. § 507(a), (other than administrative expense claims), shall be paid in 48 equal monthly installments, with the first payment being due and payable 30 days following the later of the Effective Date or the date the Claim becomes an Allowed Claim, or as soon thereafter as practicable, and a like payment on the same date of each month thereafter for a total of 48 monthly payments.  This obligation shall bear interest at the rate of 3% per annum with such interest being calculated  from the Effective Date until paid in full.

The estimated amount of each payment under this Plan listed below is an estimate, and the actual amount of each disbursement shall be calculated as set forth above.

### IRS

| Collateral | Amount of Claim | Interest Rate | No. of Payments | Amt. of Payment | Months | Disbursement Start Date |
|---|---|---|---|---|---|---|
| n/a | $26,247.24 | 3.0% | 48 | $583.18 | 1-48 | Eff. Date + 30 days |

b.      Impairment: The Class 4 claims are impaired under the Plan.

## ARTICLE 10.

## PROVISIONS FOR TREATMENT OF
## ASSUMED EXECUTORY CONTRACT OR EQUIPMENT LEASE CLAIMANTS (CLASS 5)

a.      Treatment: Class 5 claims for Assumed Executory Contracts or Unexpired Leases shall be paid in accordance with the terms and conditions of each lease agreement, as modified, with Bankruptcy Court approval, or as set out herein.  However, *unless otherwise agreed by the Debtor and the counter party* to any Assumed Agreement as more fully set out herein,

(1) all cure payments that may be required by section 365(b)(1) of the Bankruptcy Code shall be made over two months with the first such payment due 30 days after the Effective Date and the second such payment due 60 days after the Effective Date, and

(2) in the event of a dispute regarding the amount or timing of any cure payments, the ability of Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, the dispute shall be resolved by the Bankruptcy Court and Reorganized Debtor shall make such cure payments, if any, or provide such assurance as may be required by the Final Order resolving such dispute on the terms and conditions of such Final Order.

b.      Assumption of Executory Contracts and Unexpired Leases:  As of the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor not assumed as set out in subparagraph c below,

previously assumed or subject to pending motions to assume are *rejected* by the Debtor in accordance with section 365 of the Bankruptcy Code.  The executory contracts and/or unexpired leases which are *assumed*, are the following:

> 1.   Equipment lease for dishwasher between Debtor and Ecolab.
>      *Cure Amount:* $788.70
>
> 2.   Equipment lease for an ice machine  between Debtor and Kirby  Restaurant and Chemical Supply
>      *Cure Amount:* $545.58

     c.    <u>Patient Agreements</u>.  Residents of Debtor's assisted living care facility all sign various documents, forms, and agreements with the Debtor with respect to residence in and services provided at Debtor's assisted living care facility.   Debtor does not believe that any of these documents, forms, or agreements comprise executory contracts requiring treatment under section 365 of the Bankruptcy Code.  Nevertheless, to the extent any such  documents, forms, or agreements require or are later determined to require treatment section 365 of the Bankruptcy Code, such executory contracts and/or unexpired leases which shall be assumed.   No cure amounts are necessary.

     d.    <u>Rejection of Certain Executory Contracts and Unexpired Leases</u>:  All executory contracts previously rejected, the subject of a motion to reject that is pending on the Confirmation Date, or that are not assumed herein or by other order of the court shall be *rejected* in accordance with section 365 of the Bankruptcy Code.

     e.    <u>Claims Based on Rejection of Executory Contracts and Unexpired Leases</u>:  All proofs of claim with respect to Claims arising from the rejection of an executory contract or unexpired lease shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of (a) the date of entry of an order of the Bankruptcy Court approving the rejection, or (b) the Effective Date.  Any Claims not filed within such times shall be forever barred from assertion against the Debtor, its estate or their property.  Such rejection claims if allowed shall be Allowed Class 6 Claims.

     e.    <u>Impairment:</u>    The Class 5 claims are impaired under the Plan.

## <u>ARTICLE 11.</u>

## <u>PROVISIONS FOR THE TREATMENT OF</u><br><u>ALLOWED UNSECURED CREDITOR CLAIMS (CLASS 6)</u>

     a.    <u>Treatment:</u>    The holders of Allowed Class 6 Claims shall be paid up to the full amounts of their claims, together with interest from the Effective Date at the per annum rate of 3% per annum, in semi-annual payments equal to 50% of the Excess Cash Flow of the Reorganized Debtor to be paid Pro Rata among all holders of such allowed claims with the first payment due on or before the first day of the 7th month following the Effective Date, and a like payment on the same day

of each sixth month thereafter for a term not to exceed 5 years following the Effective Date, or, until all such Allowed Claims are paid in full with interest, whichever event occurs first.  In the event the provisions of Article 13 apply, the previous provisions of this paragraph shall not apply and the holders of Allowed Class 6 Claims shall, after payment of all administrative expense claims, receive pro rata the remaining proceeds from (1) all amounts, after payment of taxes,  recovered by Debtor from MUFG Union Bank, N.A. in Cause No. 25,022 styled *Texas Enterprises, LLC v. Pacific Capital Bank, N.A.* in the 76th/276th Judicial District Court of Morris County, Texas, (2) all amounts, after payment of taxes, recovered by Debtor from ARTBE Enterprises, LLC and/or Derek Chabrowski on its claim for refund, (3) all cash on hand after payment of administrative claims, and (4) the consideration received by the Debtor from the sale of its equity.

b.    Impairment.    The holders of Class 6 Claims are impaired under the Plan.

## ARTICLE 12

## PROVISIONS FOR TREATMENT OF
## EQUITY SECURITY HOLDERS OF THE DEBTOR (CLASS 7)

a.    Treatment:    Unless otherwise provided by Article 13 of the Plan, the holders of the Equity Interests shall retain such Equity Interests subject to the terms of this Plan.  If the provisions of Article 13 apply the Equity Interests shall be cancelled and the Holders of Class 7 Claims shall receive nothing of benefit under this Plan.

b.    Impairment.    The holders of Equity Interest are impaired under the Plan.

## ARTICLE 13

## PROVISIONS THAT ARE APPLICABLE ONLY IF (i) AN IMPAIRED CLASS
## REJECTS THE PLAN, AND (ii) IT IS DETERMINED THAT TO SATISFY THE
## REQUIREMENTS OF 11 U.S.C.§ 1129(B) EXISTING EQUITY INTERESTS
## MUST BE CANCELLED

13.1    The provisions of this Article 13 are applicable only if (i) an Impaired Class rejects the Plan and (ii) it is determined that to satisfy the requirements of 11 U.S.C. § 1129(b) existing Equity Interests must be cancelled.

13.2    On the Effective date, the certificates which previously evidenced ownership of the existing Equity Interests and the rights of the holders of the existing Equity Interests shall be cancelled and shall be null and void and the holders thereof shall have no rights and such certificates shall evidence no rights.

13.3    A public auction of the equity ownership interest of the Reorganized Debtor shall be held at the offices of Searcy & Searcy, P.C., 446 Forrest Square, Longview, Texas (P.O. Box 3929) at 10 a.m.

three (3) days prior to the date scheduled for hearing on confirmation of the Plan. The auction shall be conducted by Debtor's counsel. All initial bids shall be sealed and in writing with an opportunity for any bid to be increased after the initial bids are opened and made public in an open auction forum with minimum bid raises of not less than $5,000.00. Only persons or entities who are Qualified Bidders may make bids. Only Qualified Bidders who make initial sealed bids may participate in the subsequent bidding. All bids must be for cash or credit against allowed Administrative Expense claims. The successful bidder shall pay Debtor the amount of the successful cash bid prior to the date scheduled for hearing on confirmation of the Plan. If payment is not received, the bid shall be awarded to the next highest bidder. If no bids are received or payment is not made by the successful bidder within the time period allowed herein, the holders of Equity Interests shall retain their stock.

13.4   In the event a successful bid is accepted pursuant to paragraph 13.3, new Common Stock shall be issued by the Debtor for 100% of the then outstanding issues shares of stock in the Reorganized Debtor and delivered to the successful bidder on the Effective Date.

## ARTICLE 14

## PROVISIONS FOR
## TREATMENT OF DISPUTED CLAIMS

Provision for Disputed Claims:  The Debtor shall litigate Disputed Claims to determine the extent to which the Disputed Claim should be allowed. During the pendency of such litigation, the Debtor shall escrow into a Disputed Claims Reserve such amounts as may be fixed by agreement, by provisional allowance in the Confirmation Order, or by other order of the Bankruptcy Court, unless other depository arrangements or terms are directed by order of the Bankruptcy Court.

## ARTICLE 15

## MEANS FOR EXECUTION OF THE PLAN

15.1.   Reorganized Debtor:  From and after the Effective Date, the Reorganized Debtor shall continue in existence as a separate corporate entity, in accordance with the law applicable in the jurisdiction under which it was incorporated and pursuant to its charter, articles, and bylaws in effect on the Effective Date.

15.2.   Revesting of Assets:  Except as otherwise provided in this Plan, the property and assets of the Debtor's bankruptcy estate shall revest in the Reorganized Debtor on the Effective Date free and clear of all Claims and Equity Interests, but subject to the obligations of the Reorganized Debtor as set forth in this Plan. Commencing on the Effective Date, the Reorganized Debtor may conduct and change their businesses, without any supervision by the Bankruptcy Court or the office of the United States Trustee and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Chapter 11 Case. From and after the Effective Date, the Reorganized Debtor may use, operate and deal with their assets and property without any supervision and free of any such restrictions

imposed by the Code or the Court.

15.3.   Directors and Officers:  The initial post-Effective Date directors and officers of the Reorganized Debtor shall serve in their respective capacities as directors and officers of the Debtor with compensation as reflected.  The directors and officers are currently as follows:

*Manager:*                       *Jan Litwin, President*

15.4.   Amended and Restated Articles of Incorporation:  The Articles of Incorporation of the Reorganized Debtor shall be amended, if and as necessary, to comply with the provisions of this Plan.

15.5.   Distributions.   The Reorganized Debtor may distribute available funds in accordance with the Plan.

## ARTICLE 16

## EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

16.1.   Impaired Classes to Vote:  Each impaired class of Claims and Equity Interests shall be entitled to vote separately to accept or reject the Plan.  A holder of a Disputed Claim that has not been temporarily allowed for purposes of voting on the Plan may vote the Disputed Claim in an amount equal to the portion, if any, of the Claim shown as fixed, liquidated and undisputed in the Schedule.

16.2.   Acceptance by Class of Creditors:  A class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims or Equity Interests of the class that have accepted or rejected the Plan.

16.3.   Cramdown: If any impaired class shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserve the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

## ARTICLE 17

## PROVISIONS FOR RESOLUTION AND TREATMENT OF PREFERENCES, FRAUDULENT CONVEYANCES, AND DISPUTED CLAIMS

17.1.   Preferences and Fraudulent Conveyances: The Reorganized Debtor shall be the only party authorized to object to Claims and to pursue actions to recover preferences and fraudulent conveyances or any other transaction voidable under Chapter 5 of the Bankruptcy Code.  Unless Reorganized Debtor consents, or unless otherwise ordered by the Bankruptcy Court, no other party shall have the right or obligation to pursue such actions.

17.2.   Objections to Claims:  The Reorganized Debtor shall have the sole authority to object and

contest the allowance of any Claims filed with the Bankruptcy Court within 90 days after the Confirmation Date. Claims listed as disputed, contingent or unliquidated on the Schedules are considered contested Claims, except Claims otherwise treated by the Plan or previously allowed or disallowed by Final Order of the Bankruptcy Court.

17.3.   <u>Disputed Claims Reserve</u>:  The Distributions reserved for the holders of Disputed Claims shall be deposited by the Debtor in the Disputed Claims Reserve.  The Disputed Claims Reserve shall be held in trust by the Debtor for the benefit of the holders of Disputed Claims pending a determination of entitlement to the Disputed Claims under the terms of the Plan and for the holders of Allowed Claims whose Distributions are unclaimed.  At such time as a Disputed Claim becomes an Allowed Claim, that shall be deemed the Effective Date for purposes of such Claim and the Distributions allowed for such Allowed Claims shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim.  If a Disputed Claim is disallowed, the Distributions provided for the Claim shall be released to the Reorganized Debtor for distribution to other creditors under this Plan.

17.4.   <u>Investment of Funds</u>:  All Cash held in the Disputed Claims Reserve and the reserve established for Administrative Expense Claims shall be invested in those investments described in section 345 of the Bankruptcy Code.  Reorganized Debtor shall be responsible for the cost and expenses incurred in connection with the maintenance of these reserves and the making of Distributions from the reserves after the Effective Date.

17.5.   <u>Unclaimed Distributions</u>:  In the event any Distributions under the Plan remain unclaimed as of one (1) year after the Effective Date such Distributions shall be released to Reorganized Debtor and the obligation to make the Distribution deemed fulfilled.

## ARTICLE 18

### PROVISIONS FOR RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE ESTATE

18.1.   <u>Causes of Action</u>:  All claims recoverable under section 550 of the Bankruptcy Code, all claims against third parties on account of any indebtedness, and all other claims owed to or in favor of Debtor to the extent not specifically compromised and released pursuant to this Plan or an agreement referred to or incorporated herein, shall be preserved and retained for enforcement by Reorganized Debtor after the Effective Date.  Debtor specifically preserves its claims in Cause No. 25,022 styled *Texas Enterprises, LLC v. Pacific Capital Bank, N.A.* in the 76th/276th Judicial District Court of Morris County, Texas, its claim against ARTBE Enterprises, LLC and/or Derek Chabrowski for refund, its claims against CIGNA (including any related companies, persons, or affiliates) for unpaid insurance or other payments or reimbursements owed to Debtor, its claims against any other insurance provider (including any related companies, persons, or affiliates) for unpaid insurance or other payments or reimbursements owed to Debtor, its claims against any resident in Debtor's facility for unpaid charges or other payments or reimbursements owed to Debtor, and any claims against any employee of Debtor for recovery of payments or reimbursements owed to Debtor.

18.2.   <u>Legally Binding Effect; Discharge of Claims and Equity Interests</u>:  The provisions of this Plan shall (a) bind all Creditors and Equity Interest holders, whether or not they accept this Plan, and (b) discharge Debtor from all debts that arose before the Petition Date.  In addition, the distributions of Cash and securities provided for under this Plan shall be in complete satisfaction, discharge and release of all Claims against and Equity Interests in Debtor or any of their assets or properties, including any Claim or Equity Interest accruing after the Petition Date and before the Effective Date.  On and after the Effective Date, all holders of impaired Claims and Equity Interests shall be precluded from asserting any Claim against Reorganized Debtor or its assets or properties based on any transaction or other activity of any kind that occurred before the Petition Date.  The Distributions provided for Creditors and Equity Interest holders shall not be subject to any Claim by another Creditor or Equity Interest holder by reason of an assertion of a contractual right of subordination.

## ARTICLE 19

## <u>RETENTION OF JURISDICTION</u>

19.1.   <u>Jurisdiction</u>:  Until this Chapter 11 Case is closed, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including that necessary to ensure that the purpose and intent of this Plan are carried out and to hear and determine all Claims set forth above that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against Debtor and to enforce all causes of action that may exist on behalf of Debtor.  Nothing contained in this Plan shall prevent Reorganized Debtor from taking such action as may be necessary in the enforcement of any cause of action that may exist on behalf of Debtor and that may not have been enforced or prosecuted by the Debtor.

19.2.   <u>Examination of Claims</u>:  Following the Confirmation Date, the Bankruptcy Court shall further retain jurisdiction to decide disputes concerning the classification and allowance of the Claim of any Creditor and the re-examination of Claims that have been allowed for the purposes of voting, and the determination of such objections as may be filed to Creditors' Claims.  The failure by Debtor to object to, or to examine, any Claims for the purposes of voting shall not be deemed a waiver of its right to object to, or to re-examine, the Claim in whole or in part.

19.3.   <u>Determination of Disputes</u>:  The Bankruptcy Court shall retain jurisdiction after the Confirmation Date to determine all questions and disputes regarding title to the assets of Debtor's estate, disputes concerning the allowance of Claims, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, for Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

19.4.   <u>Additional Purposes</u>:  The Bankruptcy Court shall retain jurisdiction for the following additional purposes after the Effective Date:

(a)      to modify this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(b)     to assure the performance by Reorganized Debtor of its obligations to make Distributions under this Plan;

(c)     to enforce and interpret the terms and conditions of this Plan;

(d)     to adjudicate matters arising in these bankruptcy cases, including matters relating to the formulation and consummation of Debtor Plan;

(e)     to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of Reorganized Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as this Bankruptcy Court may deem necessary;

(f)     to enter an order terminating this Chapter 11 Case;

(g)     to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan;

(h)     to allow applications for fees and expenses pursuant to section 503(b) of the Bankruptcy Code;

(i)     to decide issues concerning federal tax reporting and withholding which arise in connection with the confirmation or consummation of this Plan.

## ARTICLE 20

## DEFAULT UNDER PLAN

20.1.   <u>Asserting Default</u>: If Debtor defaults under the provisions of this Plan (as opposed to default under the documentation executed in implementing the terms of the Plan, which documents shall provide independent bases for relief), any Creditor or party in interest desiring to assert a default shall provide the Debtor with written notice of the alleged default.  Failure to timely pay ad valorem property taxes for calendar year 2016 shall be an event of default under the Plan.

20.2.   <u>Curing Default</u>: Except as otherwise set out herein, the Debtor shall have thirty (30) days from receipt of the written notice in which to cure an alleged breach or default under this Plan, including any default under any Related Document.  The notice shall be delivered by *United States certified mail, postage prepaid, return receipt requested*, and by *regular, first class mail, postage prepaid,* addressed to the president of the Debtor at the following address:

Texas Enterprises, LLC d/b/a Bluebonnet Elite Assisted Living
Attention: Jan Litwin, President
102 Floyd St.
Naples, TX 75568

and to counsel for the Debtor at the following address:

Joshua P. Searcy
SEARCY & SEARCY, P.C.
P.O. Box 3929
Longview, Texas 75606
(903) 757-3399 Telephone
(903) 757-9559 Facsimile

If the default is not cured, any Creditor or party in interest may thereafter file with the Bankruptcy Court and serve upon counsel for the Debtor a motion to compel compliance with the applicable provision of the Plan.  The Bankruptcy Court, upon finding a material default, shall issue such orders compelling compliance with the pertinent provisions of the Plan.  Notwithstanding anything else in Article 20 herein, a plan default with respect to payment of a Class 4 Priority Claim shall be subject to the specific provisions attached hereto as Exhibit A.

## ARTICLE 21

## MISCELLANEOUS PROVISIONS

21.1.    Termination of Committees: On the Effective Date, all Committees, if any, in the Debtor's Chapter 11 Case, if any, shall be terminated.

21.2.    Compliance with Tax Requirements and Limit on Distribution:  In connection with this Plan, Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions shall be subject to such withholding and reporting requirements.  In particular, but without limitation, no distribution under this plan to any creditor or Claim Holder shall be made unless the Reorganized Debtor has sufficient information to file all Internal Revenue Service reports required with respect to such payment or such creditor or Claim Holder shall complete and return to the Reorganized Debtor an Internal Revenue Service Form W-9 which shall be provided by Reorganized Debtor within a reasonable time following written request by the creditor or Claim Holder.

21.3.    Amendment of the Plan:  This Plan may be amended by the Debtor before or after the Effective Date as provided in section 1127 of the Bankruptcy Code.

21.4.    Revocation of Plan: Debtor reserves the right to revoke and withdraw this Plan at any time before the Confirmation Date.

21.5.    Effect of Withdrawal or Revocation:  If Debtor revokes or withdraws this Plan before the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver

or release of any Claims by or against Debtor or any other person, or to prejudice in any manner the rights of Debtor or any person in any further proceedings involving Debtor.

21.6.  <u>Due Authorization By Creditors</u>:  Each and every Creditor who elects to participate in the Distributions provided for herein warrants that it is authorized to accept in consideration of the Claim against Debtor the Distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

21.7.  <u>Filing of Additional Documentation</u>:  On or before the Effective Date, Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effect and further evidence the terms and conditions of this Plan.

21.8.  <u>Implementation</u>:  The Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.

21.9.  <u>Ratification</u>:  The Confirmation Order shall ratify all transactions effected by the Debtor during the pendency of this Chapter 11 Case.

21.10.  <u>Limitation of Liability in Connection with the Plan, Disclosure Statement and Related Documents and Related Indemnity</u>:

(a)    The Plan Participants shall neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement or the Confirmation Order, including solicitation of acceptances of the Plan; *provided, however,* that the provisions of this Section 21.10(a) shall have no effect on the liability of any Plan Participant that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(b)    Reorganized Debtor shall indemnify each Plan Participant, hold each Plan Participant harmless from, and reimburse each Plan Participant for, any and all losses, costs, expenses (including attorneys' fees and expenses), liabilities and damages sustained by a Plan Participant arising from any liability described in this Section 21.10.

21.11.  <u>Section Headings</u>:  The section headings used in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

DATED: March 4, 2016.

Texas Enterprises, LLC

By:    /S/ Jan Litwin
      Jan Litwin, President

COUNSEL FOR DEBTOR:

/S/ Joshua P. Searcy
Jason R. Searcy
Joshua P. Searcy
Callan C. Searcy
SEARCY & SEARCY, P.C.
Box 3929
Longview, Texas 75606

EX A

FOR INDIVIDUAL CHAPTER 11 BAPCPA DEBTORS

Claim Language and Default Language

## EVENTS OF DEFAULT; ACCELERATION

a. **Events of Default.** The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the automatic stay provided under 11 U.S.C. 362 shall  lift without further notice by the Court and the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: /IRS, 1100 Commerce Street, Mail Code **5024** DAL, Dallas, Texas 75242 attn: Bill Morse.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.