DEREK JAHN CHABROWSKI
2155 W Pinnacle Peak Rd, STE 201
Phoenix, AZ 85027
Phone: 480-359-4765
E-Mail: dchabro@live.com
Complainant in *Pro Se*

2016 SEP 23  AM 11: 29

## UNITED STATES BANKRUPTCY COURT
## EASTER DISTRICT OF TEXAS (MARSHALL)

IN RE:

**TEXAS ENTERPRISES LLC**

Debtor

) CASE NO: 15-20032
)
)
) **MOTION TO REOPEN CASE**
)
) FOR PURPOSE OF CRIMINAL
) INVESTIGATION
)

On or about the dates between April 12th, 2012 and May 17th, 2016, in the county of Marshall in the Eastern District of Texas and subsequently in the county of Maricopa in the District of Arizona, Wlodzimierz Jan Litwin ("Litwin") violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(a)(1)(A)(ii) | Laundering of Monetary Instruments |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1957(f)(1) | Engaging In Monetary Transactions of Property Derived from Unlawful Activity |
| 18 U.S.C. § 2321 | Trafficking In Motor Vehicles with Intent To Sell |
| 18 U.S.C. § 152(8) | Destruction or Alteration of Recorded Information |
| 18 U.S.C. § 157 | Bankruptcy Fraud |
| 26 U.S.C. § 7201 | Tax Evasion |
| 18 U.S.C. § 1348 | Securities and Commodities Fraud |

The following was made in support of a criminal investigation against Wlodzimierz Jan Litwin, currently pending at the FBI office in Phoenix, Arizona and FBI field office in Prague, Czech Republic for violations of 18 U.S.C. § 1956(a)(1)(A)(ii) (Laundering of

Monetary Instruments); 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1957(f)(1) (Engaging In Monetary Transactions of Property Derived from Unlawful Activity); 18 U.S.C. § 2321 (Trafficking In Motor Vehicles with Intent To Sell); 18 U.S.C. § 152(8) (Destruction or Alteration of Recorded Information); 18 U.S.C. § 157 (Bankruptcy Fraud); 26 U.S.C. § 7201 (Tax Evasion); and 18 U.S.C. § 1348 (Securities and Commodities Fraud).

The facts in this Motion to Reopen the above stated bankruptcy case are based upon personal experience and/or observations, physical documents in possession as well as public documents issued by or in the possession of the pertinent government offices, and is intended to show there exists sufficient probable cause to warrant further Court's investigation into the activities of W. Jan Litwin as it pertains to Chapter 11 bankruptcy of Texas Enterprises LLC.

Litwin entered Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living into Chapter 11 Bankruptcy on March 2nd, 2015, listing ARTBE Enterprises as one of the Creditors, one of the companies he used to "launder" funds away from Texas Enterprises to his offshore accounts, one of which has been since identified by INTERPOL as belonging to ETE ENV-Tech Europe Chemical Cleaning LLC, a Czech Republic based corporation initially registered by Litwin through Agents and Corporations, Inc. in Wilmington, Delaware.

More on the extent of Litwin's criminal activities is further outlined in the attached Supplemental Information for Purpose of Criminal Investigation.

X  Continued on attached sheets

DATED this 20th day of September, 2016

Derek Chabrowski

2

DEREK JAHN CHABROWSKI
2155 W Pinnacle Peak Rd, STE 201
Phoenix, AZ 85027
Phone: 480-359-4765
E-Mail: dchabro@live.com
Complainant in *Pro Se*

## UNITED STATES BANKRUPTCY COURT
## EASTER DISTRICT OF TEXAS (MARSHALL)

| | |
|---|---|
| IN RE: | ) **CASE NO: 15-20032** |
| | ) |
| | ) |
| TEXAS ENTERPRISES LLC | ) **SUPPLEMENTAL INFORMATION** |
| | ) **FOR PURPOSE OF CRIMINAL** |
| | ) **INVESTIGATION** |
| Debtor | ) |
| | ) |

## I.   INTRODUCTION AND BACKGROUND

The following is made in support of a criminal complaint against Wlodzimierz Jan Litwin for violations of 18 U.S.C. § 1961 (Racketeering);18 U.S.C. § 1956(a)(1)(A)(ii) (Laundering of Monetary Instruments); 18 U.S. Code § 1343 (Wire Fraud), 18 U.S.C. § 1957(f)(1) (Engaging In Monetary Transactions of Property Derived from Unlawful Activity); 18 U.S.C. § 2321 (Trafficking In Motor Vehicles with Intent To Sell); 18 U.S.C. § 1623(c)(1) (False Declarations Before Grand Jury or Court); 18 U.S.C. § 152(7) (Fraudulent Transfer or Concealment); 18 U.S.C. § 152(8) (Destruction or Alteration of Recorded Information); 18 U.S.C. § 152(9) (Withholding of Recorded Information); 18 U.S.C. § 157 (Bankruptcy Fraud); 26 U.S.C. § 7201 (Tax Evasion); and 18 U.S.C. § 1348 (Securities and Commodities Fraud).

The facts in this Criminal Complaint Information are based upon personal experience and/or observations, physical documents in my possession as well as public documents issued by or in the possession of the pertinent government offices, and is intended to

1

show there exists sufficient probable cause to warrant further investigation into the activities of the Defendant on behalf of Debtor, Texas Enterprises LLC.

## II.    SUMMARY

The Defendant, Wlodzimierz Jan Litwin ('LITWIN' for brevity) is a resident of 3704 Larkspur Lane, Cameron Park, CA 95682-9030, was formerly married to Izabela Nordahl ('NORDAHL' for brevity). Nordahl's father is Ryszard Piskorczyk ('PISKO' for brevity), who currently resides in Poland, and to the best of my knowledge, does not have a Visa to enter the country. Roman Mozdyniewicz ('ROMAN' for brevity) lives next door to Litwin at 3684 Larkspur Lane, and has assisted Litwin in numerous acts enumerated herein.

Witnesses for the State shall include Derek Jahn Chabrowski ('DEREK' for brevity), Janusz Kecki ('KECKI' for brevity), Zbigniew Makowiecki ('ZIGGY' for brevity) and Zbigniew Witko ('WITKO' for brevity), all of whom are investors and victim of the crimes perpetrated by the Defendant. Tammy Makowiecki ('TAMMY' for brevity) who is the wife of Ziggy and a former employee of the Defendant, Debbie Denis ('DENIS' for brevity) a Certified Public Accountant who was terminated by the Defendant for refusing to commit 'Inflation Fraud', and Chris Turner ('TURNER' for brevity), the Certified Public Accountant who replaced Denis after her termination, who has also reached out to the other investors to inform them of the destruction, alteration and withholding of financial information related to Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC, which was conducting business under the assumed name of Bluebonnet Elite Assisted Living.

ETEENV-Tech Europe Chemical Cleaning LLC was a Delaware based corporation registered by Litwin through Agents and Corporations, Inc. 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, DE 19801 on April 12th, 2005, which has since lapsed. ETEENV-Tech Europe Chemical Cleaning is also a Czech Republic based

corporation registered by Litwin personally on September 12, 2014; established using funds and other properties embezzled from Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC/Bluebonnet Elite Assisted Living, and laundered through ARTBE Enterprises.

Texas Enterprises LLC is a Delaware based corporation registered by Litwin, also through Agents and Corporations, Inc. of Wilmington, DE 19801 on October 24th, 2005. Texas Enterprises LLC was also registered as a foreign corporation with the state of Texas on September 13th, 2007, and is the owner Texas Bluebonnet Enterprises LLC a Texas based corporation registered on September 21st, 2007 who is currently doing business under the assumed name of Bluebonnet Elite Assisted Living, which is a 62-bed capacity, Level II Assisted Living Facility (Healthcare Provider Taxonomy Code 310400000X), currently registered in accordance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), with a National Providers Identity (NPI) code of 1316102809.

Western Enterprises is the assumed name that Litwin conducts business under. The assumed name was established in 2006, and is currently registered with an office address at 3704 Larkspur Lane, Cameron Park, CA 95682-9030. In December of 2015, Roman was hired by Litwin to manage Western Enterprises.

ARTBE Enterprises was established on March 1st, of 2012, and was an investment into a "business idea" proposed by Litwin to Derek as a high-end car rental and leasing business. After its establishment, under the terms, Litwin was to manage the business with very little input from Derek, in exchange for a share in the profits of the corporation. Litwin used his management capacity, without any knowledge of Derek, to open account number 7804351410 with the BMO Harris Bank in Arizona (the 'SECRET' account for brevity) in the name of the business, but for the sole purpose laundering embezzled property from Texas Enterprises LLC and Texas Bluebonnet Enterprises

3

LLC/Bluebonnet Elite Assisted Living to ETEENV-Tech Europe Chemical Cleaning in the Czech Republic. Litwin also used his management capacity to purchase sixteen (16) high-end motor vehicles from auctions, and embezzled these from ARTBE Enterprises upon the discovery of his laundering activities by Derek.

These motor vehicles have been identified as:

[1] 2001 ZIEMAN Trailer worth $3,200,

[2] 2005 WELLCRAFT 252 worth $52,900,

[3] 2006 BUELL XB12SS Lightning worth $4,600,

[4] 2007 Harley-Davidson Road King Custom worth $17,800,

[5] 2007 JEEP WRANGLER S 4X4 worth $16,500,

[6] 2007 MV AGUSTA F4-1000S worth $9,800,

[7] 2007 YAMAHA YZ250FWL worth $6,200,

[8] 2008 BENTLEY Continental GT/SS worth $78,500,

[9] 2008 BUELL XB12S Lightning worth $5,100,

[10] 2008 Mercedes S63 AMG worth $29,700,

[11] 2009 BMW X5 xDrive35d worth $20,600,

[12] 2010 BMW 335i xDrive Sedan worth $21,500,

[13] 2013 DUCATI Streetfighter 848 worth $8,900,

[14] 2014 Mercedes CLA45 worth $41,300, and a

[15] 2015 MERCEDES GLA250 worth $31,300.

The combined value of the fifteen (15) motor vehicles embezzled by Litwin from ARTBE Enterprises was $347,900; along with the sixteenth (16th) car that was sold by Litwin to his ex-wife, Nordahl, for a mere $8,500, which was 25% of its actual value at the time and was never reported to ARTBE Enterprises.

In contemplation of entering Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living into bankruptcy, Litwin established a "Construction Fund" and assigned ARTBE Enterprises as the contractor. On

4

November 19th, 2012 Litwin deposited the first check drafted from Bluebonnet Elite Assisted Living's Bank of America account post-dated, November 21st, 2013. A total of $76,600 was embezzled out of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living for the "Construction Fund" and the building of a storage shed which was never built.

After embezzling this "Construction Fund", Litwin began issuing "Consultant Fees" to ARTBE and on November 24th, 2014, deposited Two (2) checks, dated September 17th, 2014 and October 23rd, 2014, for $2,000 each, into thee "secret" ARTBE Enterprises account. An additional $12,000 was embezzled out of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living for "Consultant Fees", but were reported as "Construction Fund" payments in the SOFA.

On April 2nd, 2013, in contemplation of bankruptcy, after Andrew Latala left Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living, Kecki bought 15% of the company, and on April 7th, 2013, Litwin was allegedly voted by the board, consisting of Nordahl, Pisko, Kecki and Litwin, as the president of the company. On April 11th, 2014, Litwin also sold Derek 15% of the company, but never recorded this sale, nor any other sale or transfer of shares in Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living. Litwin would later purchase all outstanding shares of the company for a mere $5,000; purposely failing to notify the other investors of the sale ordered by the court.

Litwin entered Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living into Chapter 11 Bankruptcy on March 2nd, 2015, listing ARTBE Enterprises as one of the Creditors so he could continue making payments to his "secret" account throughout the Bankruptcy process. On March 17th, 2016 the reorganization plan was approved, and on May 17th, 2016 Texas Enterprises LLC and

Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living left Bankruptcy.

On March 4th, 2014 Litwin wired $20,000 from his "secret" account to an account he had opened in the Czech Republic, under the name of ETEENV-Tech Europe Chemical Cleaning. And again on April 2nd, 2014 Litwin wired an additional $25,000 from this "secret" account.

Finally, on October 7th, 2015 after discovering Litwin's scheme Derek closed Litwin's "secret" account. An approximate total of $182,108 in cash had been embezzled from Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living and ARTBE Enterprises; with Litwin withdrawing a total of $92,758.38 in cash, transferred $44,350 out of the account to second (2nd) unknown account and wired $45,000 out of the country.

## III.    RELEVANT STATUES

Based on the fact set forth in this Criminal Complaint Information, there is sufficient probable cause to believe that Wlodzimierz Jan Litwin has committed violations of the law, to include 18 U.S.C. § 1961 (Racketeering);18 U.S.C. § 1956(a)(1)(A)(ii) (Laundering of Monetary Instruments); 18 U.S. Code § 1343 (Wire Fraud), 18 U.S.C. § 1957(f)(1) (Engaging In Monetary Transactions of Property Derived from Unlawful Activity); 18 U.S.C. § 2321 (Trafficking In Motor Vehicles with Intent To Sell); 18 U.S.C. § 1623(c)(1) (False Declarations Before Grand Jury or Court); 18 U.S.C. § 152(7) (Fraudulent Transfer or Concealment); 18 U.S.C. § 152(8) (Destruction or Alteration of Recorded Information); 18 U.S.C. § 152(9) (Withholding of Recorded Information);18 U.S.C. § 157 (Bankruptcy Fraud); 26 U.S.C. § 7201 (Tax Evasion); and 18 U.S.C. § 1348 (Securities and Commodities Fraud).

**Title 18 U.S. Code § 1961 -** prohibits any act indictable under 18 U.S. Code § 1343 (wire fraud), 18 U.S. Code § 1956 (relating to the laundering of monetary instruments), 8

U.S. Code § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), 18 U.S. Code § 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts). The essential elements of this offense are: (1) the defendant received income derived, directly or indirectly, from a pattern of racketeering activity; (2) the defendant knew the income represented the proceeds from the pattern of racketeering activity; and (3) the defendant invested, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**Title 18 U.S. Code § 1956(a)(1)(A)(ii)** - prohibits the laundering of proceeds through a transaction constituting a violation of 26 U.S.C. § 7201 or 26 U.S.C. § 7206. The essential elements are: (1) the defendant conducted or intended to conduct a financial transaction constituting a violation of 26 U.S.C. § 7201 or 26 U.S.C. § 7206; (2) the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (3) the defendant knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of the unlawful activity.

**Title 18 U.S. Code § 1343** - prohibits wire fraud. The essential elements of this offense are: (1) the defendant knowingly participated in, devised or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material, that is they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and (4) the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

**Title 18 U.S. Code § 1957(f)(1)** - prohibits the engagement of a monetary transaction, which includes the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument, as defined under 18 U.S.C. 1956(c)(5), by, through, or to a financial institution, including any transaction that would be a financial transaction under section 18 U.S.C. 1956(c)(4)(B), of property obtained through unlawful activities. The essential elements of this offense are: (1) the defendant knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew that the transaction involved criminally derived property; (3) the value of the criminally derived property exceeds $10,000; (4) the criminally derived property must have been derived from a specified unlawful activity; and (5) the monetary transaction must have taken place.

**Title 18 U.S. Code § 2321** - prohibits the trafficking in motor vehicles with the intent to sell. The essential elements of this offense are: (1) the defendant obtained control of a motor vehicle; (2) the defendant knew that his control of the motor vehicle was the result of some form of unlawful activity; (3) the defendant devised a scheme to dispose of the motor vehicle; and (4) the defendant disposed of the motor vehicle.

**Title 18 U.S. Code § 1623(c)(1)** - prohibits the submission of false declarations before any court. The essential elements of this offense are: (1) the defendant was under oath, or submitted any declaration, certificate, verification or statement under penalty of perjury; (2) the defendant made uses any other information, including any book, paper, document, record, recording, or other material; (3) the defendant knew the same contained a false declarations; and (4) the declaration was material to the point in question.

**Title 18 U.S. Code § 152(8)** - prohibits the destruction or alteration of any recorded information relevant to the filing of a chapter 11 bankruptcy. The essential elements of this offense are: (1) the defendant filed, or contemplated the filing of a chapter 11

8

bankruptcy; (2) the defendant concealed, destroyed, mutilated, or made an entry into any financial record of the debtor; and (3) the defendant knowingly concealed, destroyed, mutilated the financial records, or knew that the entry into any financial record of the debtor was false.

**Title 18 U.S. Code § 152(9)** - prohibits the withholding of any recorded financial information from the court relevant to the filing of a chapter 11 bankruptcy. The essential elements of this offense are: (1) the defendant already filed a chapter 11 bankruptcy; (2) the defendant withheld a financial record of the debtor from the bankruptcy court or trustee entitled to its possession; and (3) the defendant knowingly withheld the financial record.

**Title 18 U.S. Code § 157** - prohibits any form of bankruptcy fraud. The essential elements of this offense are: (1) the defendant filed a bankruptcy; (2) the defendant filed a document in the proceeding of a bankruptcy; (3) the defendant made a representation, claim, or promise concerning or in relation to a bankruptcy proceeding, at any time before or after the filing of the petition; and (4) the defendant knew at the time that the representation, claim or promise was false, or who undertakes a fraud scheme against anyone and then carries out or conceals the scheme by filing for bankruptcy or by filing any documents in the bankruptcy.

**Title 26 U.S. Code § 7201** - prohibits any action that be an attempt to evade taxation. The essential elements of this offense are: (1) the defendant attempted to evade or defeat the assessment of a tax or the payment thereof; (2) the defendant knowingly attempted to defeat the taxation; and (3) the act must have been done willingly.

**Title 18 U.S. Code § 1348** - prohibits fraud relating to securities and commodities. The essential elements of this offense are: (1) the defendant executes or attempts to execute a transaction of a security, commodity or option covered under 15 U.S.C. § 78; (2) the transaction was perpetrated by means of false or fraudulent pretenses,

representations, or promises; (3) the defendant received money or property in connection with the transaction; and (4) the defendant failed to report the transaction.

## IV.    PROBABLE CAUSE

### Litwin was engaged in racketeering

Title 18 U.S. Code § 1961prohibits any act indictable under 18 U.S. Code § 1343 (wire fraud), 18 U.S. Code § 1956 (relating to the laundering of monetary instruments), 8 U.S. Code § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), 18 U.S. Code § 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts). The essential elements of this offense are: (1) the defendant received income derived, directly or indirectly, from a pattern of racketeering activity; (2) the defendant knew the income represented the proceeds from the pattern of racketeering activity; and (3) the defendant invested, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce

### Litwin laundered funds belonging to Bluebonnet through ARTBE

In early 2012, Litwin approached Derek with a novel business plan. Accordingly, Litwin explained to Derek that he had the ability to purchase high-end luxury cars at auctions at low rates, and that if Derek would go into business with him, and finance the purchase of these cars, that he could then lease them out and/or sell them making profits from sale or lease.

Derek, saw potential in the business model proposed by Litwin, and on March 1st, 2012, they formed ARTBE Enterprises in Arizona. Under the terms of their agreement, Derek would finance the purchase of the motor vehicles, while Litwin would be responsible for the management of the day-to-day activities of the company. Derek merely wanted to make arm-length transactions and in exchange, would get a share in the

10

income of the business. Litwin had other plans for ARTBE Enterprises that he never shared with Derek, and these plans included the property of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living.

On June 1st, 2012, Derek and Litwin went to the BMO Harris Bank in Arizona and opened up a business account in the name of ARTBE Enterprises. Nearly 2 months, without the knowledge of Derek, Litwin returned to BMO Harris Bank and opened a savings account in the name of ARTBE Enterprises where only he was the authorized user.

Litwin, acting in his capacity for both ARTBE Enterprises as well as Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living, created a "Construction Fund" naming ARTBE Enterprises as the contractor and holder of this fund; without the knowledge of the investors of either company.

On November 21st, 2012, Litwin began issuing checks drafted from the Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living bank account, in the name of ARTBE Enterprises, for this "Construction Fund" and by the end of 2012, had drafted (3) checks for a total amount of $10,500:

| Draft Date | Check No. | Amount | Deposited |
|------------|-----------|--------|-----------|
| 11/21/2012 | 6934 | $5,000 | 11/19/2012 |
| 12/10/2012 | 5906 | $ 500 | 2/12/2013 |
| 12/20/2012 | 5872 | $5,000 | 4/8/2013 |

Throughout 2013, Litwin continued drafting checks, and even drafted a Cashier's Check for $27,000, from the Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living bank account, in the name of ARTBE Enterprises, for this "Construction Fund" and by the end of 2013 drafted a total of (8) additional checks plus the Cashier's Check, for a total amount of $61,850; an aggregated total for 2012 through 2013 of $72,350:

| Draft Date | Check No. | Amount | Deposited |
|---|---|---|---|
| 1/1/2013 | 5904 | $5,000 | 2/12/2013 |
| 1/10/2013 | 5841 | $500 | 2/12/2013 |
| 4/3/2013 | 6174 | $5,000 | 5/13/2013 |
| 5/23/2013 | 6360 | $5,000 | 6/14/2013 |
| 6/12/2013 | 6358 | $500 | 6/14/2013 |
| 6/12/2013 | 6359 | $5,000 | 8/27/2013 |
| unknown | unknown | $5,000 | 11/25/2013 |
| 12/16/2013 | 5153706 | $27,000 | 1/6/2014 |
| 12/23/2013 | 17252 | $8,850 | 1/6/2014 |

On the November 30th, 2013 Balance Sheet of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living, as submitted before the bankruptcy court under penalty of perjury, Litwin declared that as of November 30th, 2013, he had deposited a total of $45,000 into this "Construction Fund" when in reality, he had only deposited a total of $36,500 into the "secret" ARTBE Enterprises BMO Harris bank account.

| Draft Date | Chk No. | Amount | Deposited | Purpose |
|---|---|---|---|---|
| 4/4/2014 | 7384 | $3,000 | 4/7/2014 | Construction Fund |
| 5/7/2014 | 7533 | $5,000 | 5/21/2014 | Construction Fund |
| 6/2/2014 | 7626 | $300 | No Deposit | Storage Shed |
| 6/2/2014 | 7627 | $300 | No Deposit | Storage Shed |
| 8/25/2014 | 1183 | $2,000 | 8/26/2014 | Construction Fund |
| 8/26/2014 | 1182 | $2,000 | No Deposit | Construction Fund |
| 9/17/2014 | 1186 | $2,000 | 10/24/2014 | Consulting Fees/Fund |
| 10/24/2014 | 1188 | $2,000 | 10/24/2014 | Consulting Fees/Fund |
| 11/17/2014 | 1194 | $2,000 | 1/9/2015 | Consulting Fees/Fund |
| 12/21/2014 | 1197 | $2,000 | 1/9/2015 | Consulting Fees/Fund |
| 12/22/2014 | 1196 | $500 | No Deposit | Construction Fund |
| 1/9/2015 | 1198 | $2,000 | 1/9/2015 | Consulting Fees/Fund |
| 2/25/2015 | 1116837 | $2,000 | 3/4/2015 | Consulting Fees/Fund |

12

Likewise, on the May 31st, 2015 Balance Sheet of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living, as submitted before the bankruptcy court under penalty of perjury, Litwin declared that as of May 31st, 2015, he had deposited a total of $71,815 into this "Construction Fund" when in reality, he had only deposited a total of $88,600 into the "secret" ARTBE Enterprises BMO Harris bank account.

In 2014, Litwin continued drafting checks, from the Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living bank account, in the name of ARTBE Enterprises, for this "Construction Fund" and by the end of 2014 drafted a total of (6) additional checks, for a total amount of $12,600; an aggregated total for 2012 through 2014 of $84,950. Litwin also drafted checks from the Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living bank account, in the name of ARTBE Enterprises, for "Consulting Fees" and by the end of 2014 drafted a total of (5) additional checks, for a total amount of $8,500; an aggregated total for both the "Construction Fund" and "Consulting Fees" from 2012 through 2014 of $93,450.

And finally, in 2015, Litwin also drafted checks from the Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living bank account, in the name of ARTBE Enterprises, for "Consulting Fees" and by October 7th, 2015 drafted a total of (2) final checks, for a total amount of $4,000; an aggregated total for both the "Construction Fund" and "Consulting Fees" from 2012 through 2015 of $97,450.

| Draft Date | Chk No. | Amount | Deposited | Purpose |
|------------|---------|--------|-----------|---------|
| 1/9/2015 | 1198 | $2,000 | 1/9/2015 | Consulting Fees/Fund |
| 2/25/2015 | 1116837 | $2,000 | 3/4/2015 | Consulting Fees/Fund |

These funds were never used for constructing anything, and they were never returned by Litwin to Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living. Rather, these funds were withdrawn by Litwin in cash, transferred to another unknown account using the online banking system offered by BMO Harris or wire transferred out of the country into foreign accounts also held by Litwin.

Not only did Litwin withdraw the property of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living deposited into the account for the "Construction Fund" and "Consultant Fees" in the amount of $97,450, but he also withdrew property of ARTBE Enterprises, which had been deposited into the "secret" account with BMO Harris in order to hide these from Derek; an aggregated total of $190,108.38 (including all interest):

| Date | Amount | Type | Date | Amount | Type |
|------|--------|------|------|--------|------|
| 1/6/2014 | $3,500 | Cash Withdraw | 1/27/2015 | $2,000 | Online Transfer |
| 3/4/2014 | $2,500 | Cash Withdraw | 2/9/2015 | $3,000 | Online Transfer |
| 3/4/2014 | $20,000 | Wire Transfer | 3/2/2015 | $2,300 | Online Transfer |
| 4/1/2014 | $1,000 | TPSS Transfer | 3/20/2015 | $500 | Online Transfer |
| 4/2/2014 | $25,000 | Wire Transfer | 4/6/2015 | $700 | Online Transfer |
| 4/7/2014 | $2,000 | Cash Withdraw | 4/13/2015 | $2,250 | Online Transfer |
| 5/21/2014 | $500 | Cash Withdraw | 4/20/2015 | $750 | Online Transfer |
| 5/22/2014 | $18,500 | Cash Withdraw | 5/14/2015 | $1,000 | Online Transfer |
| 6/23/2014 | $5,000 | Cash Withdraw | 5/15/2015 | $1,000 | Cash Withdraw |
| 6/26/2014 | $5,000 | Cash Withdraw | 5/18/2015 | $700 | Online Transfer |
| 6/30/2014 | $1,000 | Cash Withdraw | 6/1/2015 | $5,000 | Online Transfer |
| 8/8/2014 | $2,000 | Cash Withdraw | 6/22/2015 | $7,150 | Cash Withdraw |
| 8/14/2014 | $1,500 | Cash Withdraw | 7/6/2015 | $2,000 | Online Transfer |
| 8/26/2014 | $2,000 | Cash Withdraw | 7/15/2015 | $500 | Online Transfer |
| 9/2/2014 | $500 | Online Transfer | 7/20/2015 | $1,000 | Online Transfer |
| 10/8/2014 | $3,000 | Online Transfer | 8/3/2015 | $500 | Online Transfer |
| 10/15/2014 | $203.52 | Cash Withdraw | 8/4/2015 | $900 | Online Transfer |
| 10/16/2014 | $1,300 | Online Transfer | 8/11/2015 | $1,300 | Online Transfer |
| 10/24/2014 | $500 | Cash Withdraw | 8/24/2015 | $2,000 | Online Transfer |

| 10/27/2014 | $1,600 | Cash Withdraw | 8/25/2015 | $1,750 | Online Transfer |
| 11/3/2014 | $300 | Online Transfer | 9/1/2015 | $150 | Online Transfer |
| 11/10/2014 | $1,000 | Online Transfer | 9/3/2015 | $1,000 | Online Transfer |
| 11/19/2014 | $800 | Online Transfer | 9/4/2015 | $350 | Online Transfer |
| 12/29/2014 | $9,800 | Online Transfer | 9/16/2015 | $2,000 | Online Transfer |
| 1/8/2015 | $1,000 | Online Transfer | 9/17/2015 | $1,000 | Cash Withdraw |
| 1/20/2015 | $1,000 | Online Transfer | 9/23/2015 | $1,000 | Debit |
| | | | 10/7/2015 | $37,804.86 | Cash Withdraw |

Under title 18 U.S. Code § 1956(a)(1)(A)(ii) the essential elements of the crime are extant. In that, **(1)** Litwin engaged in an aggregated total of $190,108.38 worth of financial transaction; **(2)** that Litwin knew these funds were derived under false pretenses as they had been reserved for a "Construction Fund"; **(3)** the value of the property exceeds $10,000; and **(4)** the monetary transactions have already taken place, between January 6th, 2014 and October 7th, 2015.

### Litwin wire transferred $45,000 in embezzled funds out of the country

On June 12th, 2012, Litwin opened up a "secret" savings account with BMO Harris (No. 7804351410), without the knowledge of Derek, and for the sole purpose of laundering property embezzled from Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living. Between the dates of November 21st, 2012 and January 6th, 2014, Litwin deposited $77,000 in checks drafted from an account owned by Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living and deposited the same in this "secret" savings account, allegedly as "Construction Funds".

| Date Issued | Chk No. | Amnt | Deposited | Source |
| --- | --- | --- | --- | --- |
| 11/21/2012 | 6934 | $5,000 | 11/19/2012 | Construction Fund |
| 12/10/2012 | 5906 | $500 | 2/12/2013 | Construction Fund |
| 12/20/2012 | 5872 | $5,000 | 4/8/2013 | Construction Fund |
| 1/1/2013 | 5904 | $5,000 | 2/12/2013 | Construction Fund |
| 1/10/2013 | 5841 | $500 | 2/12/2013 | Construction Fund |
| 4/3/2013 | 6174 | $5,000 | 5/13/2013 | Construction Fund |
| 5/23/2013 | 6360 | $5,000 | 6/14/2013 | Construction Fund |

| 6/12/2013 | 6358 | $500 | 6/14/2013 | Construction Fund |
| 6/12/2013 | 6359 | $5,000 | 8/27/2013 | Construction Fund |
| unknown | unknown | $5,000 | 11/25/2013 | Construction Fund |
| 12/16/2013 | 5153706 | $27,000 | 1/6/2014 | Construction Fund |

On March 4th, 2014, Litwin transferred the amount of $20,000 by wire (WT502886), from the "secret" account with BMO Harris Bank, to an account under the name of ETEENV-Tech Europe Chemical Cleaning, located in the Czech Republic.

ETEENV-Tech Europe Chemical Cleaning LLC was a Delaware based corporation registered by Litwin through Agents and Corporations, Inc. on April 12th, 2005, which has since lapsed. ETEENV-Tech Europe Chemical Cleaning is also a Czech Republic based corporation registered by Litwin personally on September 12, 2014.

Then on April 2nd, 2014, Litwin transferred the amount of $25,000 by wire (WT502254), from the "secret" account with BMO Harris, to another account held in his name, in Poland.

The aggregated sum of $45,000, money which belonged to Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living and allegedly given to ARTBE Enterprises "in trust" for the formation of a "Construction Fund" that never existed.

Under title 18 U.S. Code § 1343 the essential elements of the crime are extant. In that, **(1)** Litwin devised a scheme to obtain money under the false pretense, that the funds were meant to be used as a "Construction Fund" for Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living; **(2)** that Litwin would not have been able to deposit the funds with ARTBE Enterprises had he disclosed that the funds were to be deposited in the "secret" savings account, and that ARTBE Enterprises was not engaged in the business of leasing high-end motor vehicles and not in the construction industry; **(3)** Litwin intended to defraud Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living of the funds;

and **(4)** Litwin used a wire communication in which to transfer the funds outside of the country; which was an essential part of the scheme.

## Litwin made transactions using embezzled funds

The "secret" savings account Litwin opened with BMO Harris Bank (No. 7804351410), without the knowledge of Derek, and for the sole purpose of laundering property embezzled from Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living. Between the dates of November 21st, 2012 and January 6th, 2014, Litwin deposited $77,000 in checks drafted from an account owned by Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living and deposited the same in this "secret" savings account, allegedly as "Construction Funds".

Again, these funds were never used for constructing anything, and they were never returned by Litwin to Texas Enterprises LLC, nor was ARTBE Enterprises ever in the genre of construction business. Rather, Litwin only used ARTBE Enterprises to withdraw funds in cash, transferred to another unknown account using the online banking system offered by BMO Harris or wire transferred out of the country into foreign accounts also held by Litwin.

Litwin withdraw the property of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living deposited into the account for the "Construction Fund" and "Consultant Fees" in the amount of $97,450, he also withdrew property of ARTBE Enterprises as listed on page 3 and 4 of this complaint; property he himself claimed in police reports belonged to ARTBE Enterprises, including the three stolen vehicles he himself reported as stolen. In addition, Litwin drew salary from Texas Enterprises that was never authorized by shareholders and allowed himself free use of company debit cards for expenses such as: skiing in Lake Tahoe, shopping, or

even parties at Hard Rock Café. All of Litwin's lavish expenses and withdrawals qualify as elements of embezzlement.

Under title 18 U.S. Code § 1957(f)(1) the essential elements of the crime are extant. In that, **(1)** Litwin engaged in an aggregated total of $190,108.38 worth of financial transaction; **(2)** that Litwin knew these funds were derived under false pretenses as they had been reserved for a "Construction Fund"; **(3)** the value of the property exceeds $10,000; **(4)** the funds were derived through the unlawful act of embezzlement; and **(5)** the monetary transactions have already taken place, between January 6th, 2014 and October 7th, 2015.

### Litwin sold embezzled cars in another country after reporting them stolen

On March 1st, 2012, Litwin and Derek entered into a business agreement and established ARTBE Enterprises for the sole purpose of purchasing high-end and luxury motor vehicles at auctions, and to lease these cars out or otherwise sell them for a profit. Derek merely wanted to invest in the plan that had been proposed by Litwin and as such, gave Litwin management capacity to manage every aspect of the company. In return for his investment, Litwin was obligated to share with Derek, the revenue generated from the business of buying, leasing and selling high-end and luxury motor vehicles.

Over the course of their relationship, more than sixteen (16) motor vehicles, listed on page 3 of this here complaint, were purchased using company funds. The combined value of the Fifteen (15) motor vehicles is $347,900; along with the sixteenth (16th) car that was sold by Litwin to his ex-wife, Nordahl, for a mere $8,500, which was 25% of its actual value at the time and was never reported to ARTBE Enterprises.

The exact whereabouts for most of these motor vehicles is unknown. One of these was sold by Litwin to his ex-wife Nordahl for a mere $8,500 while two (2) others were reported by Litwin as stolen, only to resurface in Poland where they were sold under the name of Litwin's next door neighbor, Roman, per INTERPOL Washington DC reports.

18

Evidence suggest that Roman was intricately involved, and profited from, Litwin's scheme of frauds since at least 2012 when he helped export two of the luxury vehicles purchased with funds embezzled from Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living.

As it was later discovered, Litwin placed these two (2) vehicles in the name of his neighbor, Roman, whom he has appointed creditor and apparently agent of, or the president of Western Enterprises (the assumed name Litwin uses in the State of California due to credit and other legal issues). At least three luxury vehicles were reported stolen so that Litwin could collect the insurance monies on them, when in reality, they were already on a shipping container to Poland. The vehicles, upon appearing in Poland, became the subject of an investigation by INTERPOL, and based on this investigation, the insurance company refused to pay Litwin anything as it appeared as if the theft was merely an attempt to defraud the insurer. Finally, since the insurer never paid Litwin, the necessary elements of insurance fraud could not exist so the case against him was dismissed.

Under title 18 U.S. Code § 2321 the essential elements of the crime are extant. In that, **(1)** Litwin obtained control over the motor vehicles as the result of the unlawful act of embezzlement; **(2)** that Litwin knew he did not pay for the motor vehicles, that they belonged to ARTBE Enterprises and that he refused to return control over them to ARTBE Enterprises upon his termination from the company; **(3)** Litwin devised a scheme to dispose of the vehicles by (a) putting them in the name of his neighbor so they would be harder to track, (b) shipping them to Poland where they would be easier to sell and (c) reporting them as having been stolen so as to (i) collect the insurance money and (ii) so he could plausibly deny having anything to do with their transfer overseas and subsequent sale in Poland; and **(4)** that Litwin was able to dispose of the vehicle and make money from its disposal.

### Litwin made false declarations in the filing of Chapter 11 bankruptcy

Title 18 U.S. Code § 1623(c)(1) prohibits the submission of false declarations before any court. The essential elements of this offense are: (1) the defendant was under oath, or submitted any declaration, certificate, verification or statement under penalty of perjury; (2) the defendant made uses any other information, including any book, paper, document, record, recording, or other material; (3) the defendant knew the same contained a false declarations; and (4) the declaration was material to the point in question.

### Litwin altered the financial records of Bluebonnet to show greater depreciation

Title 18 U.S. Code § 152(8) prohibits the destruction or alteration of any recorded information relevant to the filing of a chapter 11 bankruptcy. The essential elements of this offense are: (1) the defendant filed, or contemplated the filing of a chapter 11 bankruptcy; (2) the defendant concealed, destroyed, mutilated, or made an entry into any financial record of the debtor; and (3) the defendant knowingly concealed, destroyed, mutilated the financial records, or knew that the entry into any financial record of the debtor was false.

### Litwin withheld the existence of Bluebonnet's Bank of America account!!!

Title 18 U.S. Code § 152(9) prohibits the withholding of any recorded financial information from the court relevant to the filing of a chapter 11 bankruptcy. The essential elements of this offense are: (1) the defendant already filed a chapter 11 bankruptcy; (2) the defendant withheld a financial record of the debtor from the bankruptcy court or trustee entitled to its possession; and (3) the defendant knowingly withheld the financial record.

### Litwin included creditors in the bankruptcy schedules that did not exist

Title 18 U.S. Code § 157prohibits any form of bankruptcy fraud. The essential elements of this offense are: (1) the defendant filed a bankruptcy; (2) the defendant filed a document in the proceeding of a bankruptcy; (3) the defendant made a representation,

claim, or promise concerning or in relation to a bankruptcy proceeding, at any time before or after the filing of the petition; and (4) the defendant knew at the time that the representation, claim or promise was false, or who undertakes a fraud scheme against anyone and then carries out or conceals the scheme by filing for bankruptcy or by filing any documents in the bankruptcy.

### Litwin did not pay taxes on the property embezzled from Bluebonnet and ARTBE

Between the dates of November 21st, 2012 and October 7th, 2015, Litwin embezzled an aggregate amount of $190,108.38 (including all interest) from Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living and ARTBE Enterprises, along with $347,900 worth of motor vehicles that were embezzled from ARTBE Enterprises after his illegal activities were discovered by Derek and subsequently terminated from ARTBE.

The $190,108.38 (including all interest) was either withdrawn from the "secret" savings account with BMO Harris by Litwin personally, transferred to other undisclosed accounts, or transferred by wire outside of the country.

Litwin has a tax liability to the United States Government for the $538,008.38 obtained through his unlawful activities. This alone qualifies under the 39.6% tax bracket, and as such, Litwin is liable for paying the sum of $186,009.12 in taxes on this unlawfully derived property, which has not been paid.

Under title 26 U.S. Code § 7201 the essential elements of the crime are extant. In that, **(1)** Litwin came into possession of an aggregated total of $538,008.38 worth of unlawfully derived property; **(2)** that Litwin knew these funds were taxable, but failed to report them, and took great measures to hide their existence in order to evade paying the sum of $186,009 in taxes on this unlawfully derived property; **(3)** that Litwin was not forced or coerced to evade his tax liabilities, and thus the act of evasion was done so willingly.

### Litwin committed insider trading in contemplation of bankruptcy

On April 7th, 2013, Litwin claims that he was appointed as the President of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living, during an alleged stockholder meeting which was supposedly attended by Nordahl, Pisko, Kecki and himself.

On March 2nd, 2015, Litwin, in his capacity as President, entered the company into Chapter 11 Bankruptcy. In accordance with the requirements he also submitted a Statement of Financial Affairs on March 31st, 2015 wherein he lists the following:

| PARTY NAME | SHARE | POSITION |
|---|---|---|
| Izabela Nordahl | 10% | NO TITLE |
| Wlodzimierz Jan Litwin | 5% | President |
| Janusz Kecki | 15% | NO TITLE |
| Ryszard Piskorczyk | 70% | Treasurer |

Just before the filing of the bankruptcy, Litwin apparently transferred 50% ownership of the company to Pisko. However, during the bankruptcy process, after claiming that he gave proper notice to all the shareholders of the company, their shares were auctioned off to the highest bidder and apparently only bidder, Litwin, who purchased 100% of the company for a mere $5,000.

On May 17th, 2016, the company left bankruptcy, and since Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living is a Level II Assisted Living Facility, it is required to report its owners and their shares to the State of Texas 'Department of Aging and Disability Services'. Litwin, who had declared to the bankruptcy court that he purchased 100% of the shares of the company for $5,000, later submitted to the State of Texas, in or around July 21st, 2016, that he was now the owner of only 55% of the company, claiming only the 50% allegedly owned by Pisko, and that the same percentage of the company owned by both Kecki and Nordahl was the same amount that Litwin claimed they owned prior to the company entering into bankruptcy.

| PARTY NAME | SHARE | POSITION |
|---|---|---|
| Wlodzimierz Jan Litwin | 55% | President |
| Ryszard Piskorczyk | 20% | Treasurer |
| Janusz Kecki | 15% | Member |
| Izabela Nordahl | 10% | Secretary |

But none of these lists accurately reflect the ownership of the company, since most of the sale of shares by Litwin were never recorded. Ziggy, being one of the founders of Texas Enterprises LLC and Texas Bluebonnet Enterprises LLC d.b.a. Bluebonnet Elite Assisted Living, originally held a 50% share with Litwin holding the other 50%. Ziggy sold 15% of the company to Witko, who has since passed away, thus the shares went to his surviving spouse, and 10% went to the company share pool where it was later purchased by Nordahl. Litwin on the other hand, sold 5% to Piko, 15% to Kecki and 15% to Derek. Thus at the time that Litwin entered to company into bankruptcy, the owners and their respective shares were as follows:

| PARTY NAME | SHARE | POSITION |
|---|---|---|
| Wlodzimierz Jan Litwin | 15% | President |
| RyszardPiskorczyk | 5% | Treasurer |
| JanuszKecki | 15% | NO TITLE |
| IzabelaNordahl | 10% | Secretary |
| Derek Chabrowski | 15% | NO TITLE |
| ZbigniewMakowiecki | 25% | Founder |
| ZbigniewWitko | 15% | Deceased |

According to the company operation agreement signed by Litwin and other members on April 13th, 2013: 10% was purchased by Izabela Nordhalfor $42,000, 5% was purchased by Ryszard Piskorczykfor $22,000,and 15% was purchased by Janusz Kecki for $59,500. The 15% purchased by Derek Chabrowski on April 11th, 2013 for $45,000 was never recorded.

Litwin pocketed $168,500 from the sale of 45% of the company to Nordahl, Pisko, Kecki and Derek, then willfully failed to give any proper notice to these investors about

the pending auction ordered by the Bankruptcy Court, just so he could retake possession of these shares for a mere $5,000.

Under title 18 U.S.C. § 1348the essential elements of the crime are extant. In that,**(1)** Litwin executed a transaction of a security, commodity or option covered under 15 U.S.C. § 78(c)(10), defined as any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, pre organization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; **(2)** that the transactions were perpetrated under false pretenses, as they were perpetrated in contemplation of a bankruptcy; **(3)** Litwin made $168,500 from the sale of 45% of the company to Nordahl, Pisko, Kecki and Derek only to buy these back for a mere $5,000 after failing to give proper notice to the investors; and **(4)** he failed to record or properly report any of the transactions, omitting most of these from the Statement of Financial Affairs submitted to the bankruptcy court under penalty of perjury.

## V.    CONCLUSION

Based on the fact set forth in this Criminal Complaint Information, there is sufficient probable cause to believe that Wlodzimierz Jan Litwin has committed violations of the law, specifically in terms of bankruptcy fraud, to include 18 U.S.C. § 1961 (Racketeering);18 U.S.C. § 1956(a)(1)(A)(ii) (Laundering of Monetary Instruments); 18

U.S. Code § 1343 (Wire Fraud), 18 U.S.C. § 1957(f)(1) (Engaging In Monetary Transactions of Property Derived from Unlawful Activity); 18 U.S.C. § 2321 (Trafficking In Motor Vehicles with Intent To Sell); 18 U.S.C. § 1623(c)(1) (False Declarations Before Grand Jury or Court); 18 U.S.C. § 152(7) (Fraudulent Transfer or Concealment); 18 U.S.C. § 152(8) (Destruction or Alteration of Recorded Information); 18 U.S.C. § 152(9) (Withholding of Recorded Information); 18 U.S.C. § 154 (Adverse Interest and Conduct); 18 U.S.C. § 157 (Bankruptcy Fraud); 26 U.S.C. § 7201 (Tax Evasion); and 18 U.S.C. § 1348 (Securities and Commodities Fraud). I therefore request that the Court further review the activities of Wlodzimierz Jan Litwin, and upon finding sufficient probable cause to warrant an investigation by the Department of Justice, Trustee's Office.

RESPECTFULLY SUBMITTED this 20th day of September, 2016

Derek Chabrowski